UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERIC AMADO                        :
                                  :                PRISONER
        v.                        :    Case No. 3:09cv450 (JBA)
                                  :
CHARLES LEE                       :


### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Eric Amado, an inmate currently confined at the Garner Correctional Institution in Newtown, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 1993 Connecticut conviction for felony murder, intentional murder and capital felony.  For the reasons that follow, the petition is denied.

## I.   Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court

decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).   A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.   *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).   The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context.   *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.   *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but

unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008), *cert. denied*, 555 U.S. 1176 (2009). The state court decision must be more than incorrect; it also must be objectively unreasonable which is a substantially higher standard. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *See id.*

## II. <u>Procedural History</u>

3

In 1992, police officials in Georgia arrested the petitioner as a fugitive from justice in connection with an attempted robbery and murders that had occurred on October 18, 1990 in Bridgeport, Connecticut.  In December 1992, Georgia officials returned the petitioner to Bridgeport to stand trial on charges of capital felony, murder and felony murder.  *See State v. Amado*, 42 Conn. App. 348, 355, 680 A.2d 974, 977 (1996).  On November 1, 1993, in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport, a jury convicted the petitioner of two counts of murder in violation of Connecticut General Statutes §§ 53a-54a , two counts of Felony Murder in violation of Connecticut General Statutes § 53a-54c, and one count of capital felony in violation of Connecticut General Statutes § 53a-54b.  (*See* Resp't's Mem., App. B at 3-4.) On December 10, 1993, a judge sentenced the petitioner to life without the possibility of release pursuant to Connecticut General Statutes § 53a-35 on the capital felony count.  The judge did not sentence the petitioner on the murder and felony murder counts because he determined that those counts had merged into the capital felony count. (*See id.* at 4.)

The petitioner appealed his conviction on the ground that the trial judge's instruction on the law of self-defense was deficient in a number of ways.  *See Amado*, 42 Conn. App. at 350, 680 A.2d at 975.

On July 30, 1996, the Connecticut Appellate Court concluded that the trial judge had properly instructed the jury that self-defense was not available as a defense to felony-murder and affirmed the judgment of conviction as to all counts.  *See id.* at 363, 680 A.2d at 981.

The petitioner appealed to the Connecticut Supreme Court on three grounds.  The petitioner argued that two felony murders could not form the basis for capital felony, the judge's instructions on self-defense relating to the intentional murder counts were erroneous and the judge's improperly concluded that self-defense cannot be a defense to felony murder.  *(See* Resp't's Mem., App. F.)  On July 16, 1997, the Connecticut Supreme Court granted the petition for certification to appeal the Appellate Court's decision and remanded the case to the Appellate Court in light of the decision in *State v. Johnson*, 241 Conn. 702, 699 A.2d 57 (1997) (rejecting state's claim that convictions for felony murder can serve as predicates for capital felony conviction). *See State v. Amado*, 242 Conn. 906, 697 A.2d 368 (1997).  On February 16, 1998, the Connecticut Appellate Court affirmed the judgment of conviction as to the felony murder counts, reversed the judgments of conviction on the intentional murder and capital felony counts and remanded the case back to the trial court for a new trial on the intentional murder and capital felony counts.  *See State v. Amado*, 50 Conn. App. 607. 719 A.2d 45 (1998).

5

Both the petitioner and State of Connecticut submitted petitions for certification to appeal the decision of the Connecticut Appellate Court. *See State v. Amado*, 247 Conn. 953, 723 A.2d 811 (1999). On January 4, 1999, the Connecticut Supreme Court granted certification to both the petitioner and the State of Connecticut. *See id.*

On August 15, 2000, the Connecticut Supreme Court held that the defense of self-defense did not apply to a charge of felony murder and the trial judge's self-defense instructions on a defendant's duty to retreat and a victim's right to defend his or her dwelling in connection with the intentional murder counts did not violate the petitioner's due process right to present a defense. *See State v. Amado*, 254 Conn. 184, 756 A.2d 274 (2000). Thus, the Connecticut Supreme Court reversed the Appellate Court's decision to the extent that it had reversed the trial court's judgment convicting the petitioner of murder and capital felony, affirmed the Appellate Court's prior decision holding that self-defense was not available as a defense to the charge of felony murder convictions, and remanded the case to the Appellate Court with instructions to affirm the judgment of the trial court. *See id.* at 202, 756 A.2d at 284.

On July 20, 1999, the petitioner filed a petition for writ of habeas corpus in state court on grounds of ineffective assistance of counsel, failure to disclose exculpatory evidence and actual

6

innocence.  *(See* Resp't's Mem., App. Y.)  On May 29, 2006, the petitioner filed a second amended petition.  On November 15, 2006, the court, after conducting a trial,  dismissed the second amended petition for writ of habeas corpus.  *See Amado v. Warden*, No. CV99428654S, 2006 WL 3491875 (Conn. Super. Ct. Nov. 15, 2006).  On appeal, the petitioner argued that the habeas court had improperly denied his petition as to the claim of ineffective assistance of trial counsel.

On September 16, 2008, the Connecticut Appellate Court dismissed the appeal.  *See Amado v. Commissioner of Correction*, 110 Conn. App. 345, 954 A.2d 887 (2008).  On October 20, 2008, the Connecticut Supreme Court denied certification to appeal from the decision of the Connecticut Appellate Court.  *See Amado v. Commissioner of Correction*, 289 Conn. 941, 959 A.2d 1006 (2008).

The petitioner originally commenced this action in March 2009. On June 17, 2009, the court administratively closed the case pursuant to the petitioner's request that he be permitted to fully exhaust his claims.  On May 10, 2010, the petitioner moved to lift the stay, restore the case to the docket and file an amended petition for writ of habeas corpus.  On January 18, 2011, the court granted the petitioner's motion to lift the stay and to file a second amended

petition.  Counsel for the respondent has filed a memorandum in
opposition to the Second Amended Petition.

### III.  <u>Factual Background</u>

The Connecticut Supreme Court determined that the evidence that
was before the jury with regard to the petitioner's criminal trial was
fully set forth in the Connecticut Appellate Court's decision in
connection with the initial appeal from the petitioner's conviction.
*See Amado*, 254 Conn. At 189, 756 A.2d at 278.   The Connecticut
Appellate Court determined that the jury could have reasonably found:

> On October 18, 1990, and for some time prior
> thereto, Eric Amado was living in an apartment
> in West Haven with Joanne Bailey and Hope Vaughn.
> Amado also stored cocaine that he was selling in
> bulk in the apartment. He stored the narcotics
> in a small safe and in a duffel bag, both of which
> were kept in the laundry room of the apartment.
>
> On October 18, 1990, Vaughn called Anthony Young
> at his residence at 505 Williams Street in
> Bridgeport. Young came to the West Haven
> apartment, and he and Vaughn removed the duffel
> bag and the safe from the apartment and placed
> them in the trunk of Young's red Toyota Celica.
> Before leaving the apartment, Vaughn and Young
> opened the window and knocked some items to the
> floor to make it appear that someone had broken
> into the premises. They left West Haven and went
> to 505 Williams Street. When they arrived in
> Bridgeport, Young telephoned Peter Hall, who
> then went to 505 Williams Street.
>
> Some time during that same day, Amado returned
> to the apartment and found that a window had been
> opened and that items in the apartment had been

8

knocked over. Amado had gone to the apartment to pick up a quantity of cocaine that he was going to deliver to a purchaser. When Amado went to the laundry room where his drugs had been stored, he discovered that the drugs were missing. Bailey also returned to the apartment and discovered the open window and the items knocked to the floor. She left the premises and went to her sister's house in Bridgeport.

Later in the day, Amado picked up Bailey at her sister's house in Bridgeport. Amado was driving a white Mitsubishi. Amado was accompanied by Anthony Smalls. The group went to Norwalk to look for Vaughn to ascertain whether she knew who was responsible for the theft of the drugs. Amado, Bailey and Smalls met John Wideman, who joined in the search for Vaughn.

The group went to Stamford. They arrived at a house, and Bailey and Wideman waited in the car while Amado and Smalls entered the house. After about thirty minutes, Smalls emerged from the house. Fifteen minutes later, Amado came out of the house. Amado told the others that he had been visiting with a "voodoo man" who had told him that Vaughn and two others had stolen his drugs.

The group returned to Bridgeport and left Bailey at her sister's house. Amado told her to stay there until he returned. Amado, Smalls and Wideman left the house and returned about ten minutes later accompanied by David Bailey, who was driving a blue Volvo.

The group of five decided to look for Vaughn. Amado, Smalls and Joanne Bailey rode in the white Mitsubishi, while Wideman and David Bailey rode in the blue Volvo. They first went to Vaughn's sister's house and when they did not find Vaughn there, they proceeded to 505 Williams Street. The four men were armed with pistols. They arrived at 505 Williams Street at about 9 p.m. and

9

observed Vaughn standing on the porch with Young
and Hall. Amado told Joanne Bailey to go to the
porch and tell Vaughn that he wanted to talk with
her. Vaughn came down from the porch and entered
the white Mitsubishi. Amado asked Vaughn if she
knew where his drugs were. Vaughn denied any
knowledge of the theft or whereabouts of the
missing cocaine. While questioning Vaughn, Amado
was upset and talked loudly. Amado, Smalls,
Vaughn, Wideman, David Bailey and Joanne Bailey
left Williams Street and arrived at the West
Haven apartment at about 2:30 a.m. on October 19,
1990. The group remained there overnight.

At about 10 a.m., Amado and Joanne Bailey went
into the hallway to talk with neighbors. Amado
wanted to determine whether the neighbors had
observed anyone removing items from his
apartment. After speaking with a neighbor across
the hall, Amado told Vaughn that he had learned
that she had taken his cocaine. Amado told Vaughn
that the neighbor had seen her in a red Toyota
Celica. Vaughn said that the vehicle belonged to
Young.

Amado, Smalls, Vaughn, Wideman, David Bailey and
Joanne Bailey proceeded to 505 Williams Street.
Amado, Smalls, Vaughn and Joanne Bailey rode in
the white Mitsubishi and the others rode in the
blue Volvo. They arrived at the house at about
11 a.m., and everyone exited the vehicles. Amado
and Smalls were both armed with handguns.

Amado, Vaughn and Joanne Bailey went to the porch
of the house and rang the doorbell. When nobody
answered, they knocked on the door. Young opened
the door and Hall was standing behind him. Hall
had a gun in the waistband of his pants. Amado
accused Young and Hall of having his cocaine, and
both Young and Hall denied having the drugs.

Young asked if they could talk, and Amado began
shooting. He fired five shots. Joanne Bailey was

shot in the left thigh, Young was shot in the left groin area and Hall was shot on the left side of the abdomen. Joanne Bailey went into the house, fell down and crawled into the kitchen. Hall went into the kitchen and collapsed on the floor near the refrigerator. Young collapsed in the front hall near the doorway.

Amado, Smalls, Wideman and David Bailey fled, leaving behind Vaughn and Joanne Bailey. Vaughn called 911 from a neighbor's house and EMTs responded to the call. When the EMTs arrived at the house, the front door was locked and they were unable to enter. Vaughn returned and was screaming, "He's shot." She kicked in the window, entered the house and opened the front door for the EMTs.

Upon entering the house, the EMTs observed Young lying on the floor of the front hallway. He was unconscious and had sustained a gunshot wound. He was clutching a fully loaded magazine for an automatic weapon. Hall, also suffering from a gunshot wound, was sitting on the floor in the bedroom. He was unconscious, but his eyes were open. He held a small automatic pistol. The hammer of the pistol was cocked back, and his finger was on the trigger. The EMTs also found Joanne Bailey.

The Bridgeport police arrived. Officer John Galpin spoke with Young, who had regained consciousness, and asked him to name the person who had shot him. Young responded that Amado had shot him. Young and Hall were transported to Bridgeport Hospital. Both died as a result of gunshot wounds. Young died as a result of a gunshot wound to the groin area and Hall died as a result of gunshot wound to the abdomen.

The police obtained a search warrant for 505 Williams Street, and a search of the basement resulted in the seizure of two large plastic bags

containing rocky white powder. One of the plastic
bags was inside a black duffel bag. In addition,
the police found a strainer, a spoon and a safe.
The contents of the plastic bags tested positive
for crack cocaine. The total weight of the two
bags was about three and one-half pounds and, the
drugs had a bulk value of about $38,000.

An arrest warrant was issued for Amado
(hereinafter the defendant), and he was arrested
in Georgia as a fugitive from justice. Bridgeport
authorities were notified of the defendant's
arrest on March 21, 1992, and approximately ten
months later he was returned to Bridgeport for
trial.

The defendant testified at trial. He conceded
that he had shot the victims, but asserted that
he did so in self-defense. He admitted that he
lived in the West Haven apartment
with Joanne Bailey and that in October, 1990, he
had been engaged in selling cocaine. He also
conceded that the duffel bag containing the
cocaine and the safe were his property. He
claimed that on October 18, 1990, he discovered
that these items were missing and that he and the
others went to Bridgeport to find out about the
disappearance of the items.
The defendant testified that upon arriving at 505
Williams Street, he walked up to the front door.
He asserted that he did not display a weapon as
he went to the door. He claimed that the first
person that he observed in the doorway was Young.
The defendant testified that he told Young that
the house in West Haven had been "robbed" and that
Young's car had been observed there. The
defendant claimed that he asked Young whether he
knew anything about the incident. According to
the defendant, Young indicated that "he hadn't
been up there" and that "he didn't have anything
to do with it."

The defendant further testified that as this
conversation was taking place, Hall appeared in
the doorway and stood to the rear of Young. The
defendant stated that both Young and Hall were
standing inside the house, while the defendant
was standing on the porch. The defendant said
that Smalls, who was standing to his rear, yelled
at the men in the doorway, "Do you have our shit
or don't you?" The defendant asserted that Young
became upset and shouted back at Smalls. The
defendant testified that, up to this point,
neither Young nor Hall appeared to have a weapon.

According to the defendant, Young then took a
step forward and the defendant took a step back.
The defendant claimed that he then saw Hall reach
for the waistband of his trousers and start to
draw a gun. The defendant testified that he
became frightened because he thought Hall was
going to shoot him. The defendant claimed that
he drew his gun and shot into the house several
times because he saw Hall pull out a gun. The
defendant asserted that following the shooting,
he ran away. He testified that during the
incident, he did not know that he had shot Young
and Hall.

On March 18, 1997, the victim died from the
injuries he sustained from the gunshot wound the
previous day.

*Amado*, 42 Conn. App., 351-56, 680 A.2d at 351-56.

## III. <u>Discussion</u>

The petitioner asserts three grounds for relief.  He argues

that: (1) the trial judge erred in instructing the jury that the law

of self-defense did not apply to felony murder charges; (2) the trial

13

judge improperly instructed the jury on the law of self-defense relating to the duty to retreat and relating to the rights of the victims to defend their dwelling; and (3) trial counsel was ineffective in failing to cross-examine witnesses and present exculpatory evidence.

### A.   <u>Self-Defense - Felony Murder</u>

The petitioner challenges the trial court's refusal to instruct the jury on the law of self-defense in connection with his felony murder charges.   The respondent contends that the Connecticut Supreme Court decided the issue as a matter of state law and the petitioner cannot obtain federal habeas review of that purely state law issue.

On appeal to the Connecticut Supreme Court, the petitioner argued that the Connecticut Appellate Court had erred in concluding that, as a matter of state law, the defense of self-defense is inapplicable to a felony murder charge.   *See Amado*, 254 Conn. at 197, 756 A.2d at 282.   The petitioner contended that there was nothing in the statute governing self-defense that precluded its use in connection with a felony murder charge.   The petitioner argued that the trial judge's refusal to instruct the jury that the defense of self-defense was available in connection with his felony murder charges deprived him of his statutory right to use justification as a defense and his

14

federal constitutional rights to present a defense, to due process,
to be presumed innocent and to a trial before a properly instructed
jury.  *See Amado*, 254 at 197, 756 A.2d at 282.  In the present
petition, the petitioner contends that the trial judge's statement to
the jury that the defense of self-defense did not apply to the felony
murder charges pending against him violated his right to present a
defense and to a properly instructed jury.   The Supreme Court has
emphasized that "it is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions."
*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly, federal
courts are limited to reviewing claims that a state conviction was
obtained in violation of some right guaranteed by the United States
Constitution or other federal law.  *See* 28 U.S.C. § 2254(a) (federal
courts "shall entertain an application for a writ of habeas corpus in
behalf of a person in state custody pursuant to the judgment of a State
court only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States."); *Pulley v.
Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ
on the basis of a perceived error of state law.").

The adequacy of a state jury charge is generally a question

of state law and is not reviewable in a federal habeas corpus petition absent a showing that the charge deprived the defendant of a federal constitutional right.  *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Thus, a state court's refusal to give a particular jury instruction does not raise a federal question unless the failure to give the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

In reviewing the petitioner's claim, the Connecticut Supreme Court relied on state law.  The court analyzed the purpose of Connecticut's felony murder statute as well as state cases within and outside of Connecticut that had held that self-defense was not a defense to felony murder and concluded that it would be inconsistent with the purpose of the felony murder statute to allow a defendant who had caused the death of an individual in the course of a felony to claim self-defense because the victim attempted to thwart the felony by using force.  *See Amado*, 254 Conn. at 197-200, 756 A.2d at 282-83 ("the purpose underlying felony murder . . . is to punish those whose conduct brought about an unintended death in the commission or attempted commission of a felony")(internal quotation marks and citation omitted).  Thus, the court concluded that the Connecticut

Appellate Court had correctly determined that self-defense was not a defense to felony-murder and the trial court had not erred in refusing to charge on self-defense in connection with the felony murder charges.

Because the Connecticut Appellate and Supreme Courts decided the question of whether self-defense could be applied to a felony murder on state law grounds, the claim is not cognizable in a federal habeas petition.  *See Estelle*, 502 U.S. at 67-68 ("federal habeas corpus relief does not lie for errors of state law"); *Engle v. Isaac*, 456 U.S. 107, 119-21, & n.21 (1982) (challenge to correctness of self-defense instructions under state law provide no basis for federal habeas relief); *Gryger v. Burke*, 334 U.S. 728, 731 (1948) ("a mere error of state law" is not "a denial of due process").  The petitioner contends that his claim is reviewable because he challenged the state court's determination on the ground that it deprived him of his right to present a defense as guaranteed by *Washington v. Texas*, 388 U.S. 14 (1967).  The petitioner's argument is misplaced as the right to present a defense under either the Sixth and Fourteenth Amendments does not guarantee him the right to have the state recognize any particular affirmative defense that he seeks to raise.  *See Gilmore v. Taylor*, 580 U.S. 333, 334 (1993) (rejecting argument that

17

constitutional right to present a defense includes right to have jury consider an affirmative defense).

Research has revealed no Supreme Court case holding that a failure of a state trial court to instruct a jury that a defense of self-defense is applicable to a charge of felony murder violates the defendant's federal constitutional rights.  The petitioner has not demonstrated that the trial judge's charge to the jury which included an instruction that the defense of self-defense could not be applied to the felony murder counts deprived him of due process.  Thus, the Connecticut Supreme Court's decision was not an unreasonable application of Supreme Court law.  *See Knowles v. Mirzayance*, ___ U.S. ___, 129 S. Ct. 1411, 1419 (2009) ("it is not an unreasonable application of clearly established Federal Law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (internal citation omitted).  Accordingly, the petition for writ of habeas corpus is denied on this ground.

B.  **Self Defense - Intentional Murder**

The petitioner argues that the trial court's jury instructions regarding self-defense in connection with the intentional murder charges violated his constitutional right to present a defense.

18

Specifically, he contends that the trial court failed to properly instruct the jury regarding the subjective element of the self-defense inquiry in accordance with Conn. Gen. Stat. § 53a-19[1] and that the trial court's instructions improperly focused on the rights of the victims to defend their premises pursuant to Conn. Gen. Stat. § 53a-20.[2]

---

[1]   Connecticut General Statutes § 53a-19 provides in pertinent part that:

> (a) Except as provided in subsections (b) and (c), a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.
>
> (b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . ."

[2]   Connecticut General Statutes § 53a-20 provides that:

> A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person

when and to the extent that he reasonably
believes such to be necessary to prevent or
terminate the commission or attempted
commission of a criminal trespass by such other
person in upon such premises; but he may use
deadly physical force under such circumstances
(1) in defense of a person as prescribed in
section 53a-19, or (2) when he reasonably
believes such to be necessary to prevent an
attempt by the trespasser to commit . . . any
crime of violence, or (3) to the extent that he
reasonably believes such to be necessary to
prevent or terminate an unlawful entry by force
into his dwelling as defined in section 53a-100,
or place of work, and for the sole purpose of
such prevention or termination.

The Connecticut Supreme Court determined the following additional facts were relevant to these claims:

> During its instructions on the intentional murder and capital felony charges, the trial court initially charged the jury on the victims' right to use reasonable force in defense of premises under § 53a-20. The trial court explained to the jury that "we all understand that we are here for the trial of [the defendant]. But the trial involves two people who are dead as well, so, we have to look at both positions.... [T]he two guys Young and Hall in the house ... they have a right to be in that home and as such the law protects them from intruders, invaders, trespassers or anybody coming into the home that they do not want into that home even to the extent of using force to repel the persons attempting to come there.... The statute reads as follows: A person in possession or control of premises ... is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises.... That's the perspective of Young and Hall in that house. Under the law they have a right to remain there, they have a right to be armed in their house, they have a right to repel anybody that's coming by the utilization of force, even deadly force, if they reasonably believe that they are going to be subject to a violent act or it is necessary to repel the trespass which is eminent. Now, that applies to them.... That's not self-defense. Self-defense in this case is the self-defense claim that applies to the defendant."
>
> The trial court then proceeded to instruct the jury as to the defendant's defense of self-defense with regard to the intentional

murder charge. The trial court charged the jury
as to the defendant's duty to retreat under §
3a-19 (b). The court stated that "[a] person is
not justified in using deadly physical force upon
another person if he knows that he can avoid the
necessity of using such force with complete
safety.... You may not be [justified] in using
deadly force if [the defendant] knew that he
could avoid the necessity of using such ... with
complete safety by, one, retreating, except that
an actor who used force [would] not be required
to retreat if he is in his dwelling.... Now, you
have to put that in the context of this case....
The law is clear that the issue is what the
defendant reasonably believes at the time of the
incident. That is the issue. What the defendant
reasonably believes at the time of the incident.
The question is what he reasonably believed under
the circumstances as he saw them but is not the
actual danger but what reasonably appeared to
be-to the defendant." The trial court later
revisited the defendant's duty to retreat,
stating that "[t]he defendant may not use deadly
force even in self-defense unless he has no
reasonable basis of avoiding the threatened
injury in some other manner. The defendant would
not have been justified in standing his ground
against the threatened attack to fend it off if
he could with complete safety, avoid the
confrontation by retreating. However, in
considering whether the defendant could have
retreated in safety the element of practicality
must be considered."
During deliberations, the jury requested
clarification regarding the rights available to
lawful residents of the house. The court
recharged the jury on the substance of § 53a-20,
noting that "[t]he statute ... applies to the
people that are within the house...." In
addition, the trial court stated that "the
occupant of the home has no obligation to
retreat. When you are in your home and if you

> reasonably feel there's an attempt by someone to
> commit a trespass and you are concerned about the
> use of deadly physical force you need not
> retreat. That is distinguished from the
> requirement when utilizing the defense of
> self-defense outside the presence of a home or
> workplace. The first obligation is to consider,
> is it possible to retreat...." The trial court
> then instructed the jury that the defendant has
> a duty to retreat "if he knows that he can avoid
> the necessity of using such force with complete
> safety.... The law is clear that the issue is what
> the defendant reasonably believes at the time of
> the incident."

*Amado*, 254 Conn. at 190-92, 756 A.2d at 278-79.

To warrant habeas corpus relief with regard to an improper jury instruction, the petitioner must establish that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 71-72; *see also Cupp*, 414 U.S. at 146 (petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed by the Fourteenth Amendment"). When analyzing a claim of an improper jury instruction, the court must examine the instruction in the context of the charge as a whole and the entire trial record. *See Francis v. Franklin*, 471 U.S. 307, 315 (1985).

The Connecticut Appellate Court's statement of the law, although taken from state cases, is consistent with Supreme Court precedent.

### 1.   Subjective Belief Regarding Duty to Retreat

The petitioner argues that the trial court failed to properly instruct the jury on the subjective prong of the self-defense test pertaining to the duty to retreat.  The Connecticut Supreme Court reviewed the parts of the jury charge relating to the petitioner's defense of self-defense and determined that the trial judge had repeatedly instructed the jury regarding the correct subjective standard to be applied in analyzing a defendant's duty to retreat.  Although the trial judge had neglected to mention the subjective nature of the duty to retreat component of the self-defense standard at several points during the charge, he subsequently reiterated the standard and noted that in considering whether the petitioner had a duty to retreat, the law was clear that the jury must focus on what the petitioner believed at the time of the incident in terms of whether he could retreat with complete safety.  *See Amado*, 254 Conn. at 194-95, 756 A.2d 280-81.

The Connecticut Supreme Court observed that the trial judge had never instructed the jury to measure the defendant's actions from an objective point of view, i.e. - "'as you would perceive a reasonable person to view the same situation.'"  *See id*. at 196, 756 A.2d at 281. Thus, the trial judge had not misstated the subjective component of

the duty to retreat standard.  Because the trial court had properly referred to the subjective standard by which the jury should view the defendant's knowledge of his ability to retreat multiple times within its charge to the jury, the Connecticut Supreme Court concluded that there was no real possibility that the jury had been misled by the trial judge's instructions.  *See id.* at 195-96, 756 A.2d at 281. Accordingly, the trial court's instructions on the subjective element of the self-defense test did not deprive the petitioner of a right to present a defense or a fair trial.

### 2.   <u>Victims' Right to Defend Dwelling</u>

The Connecticut Supreme Court also considered the petitioner's claim that the trial judge's instruction regarding the victims' right to defend their premises may have confused the jury as to whether they were to consider the victims' perspectives in addition to the petitioner's perspective in evaluating the petitioner's claim of self-defense.  The court noted that the purpose of the judge's instruction relating to the statute governing an individual's authority to use force to defend his or her dwelling was to provide the jury with information that might be necessary to its evaluation of whether the petitioner or the victims were the aggressors and whether the petitioner was justified in using force.  Furthermore, the trial judge's charge discussed the statute that applied to the

victims' rights separately from the statute that applied to the petitioner's right to self-defense. *See id.* at 196-97, 756 A.2d at 281-82.

Although some of the information pertaining to the rights of the victims' may have been cumulative or unnecessary, the Connecticut Supreme Court concluded that receipt of this information by the jury did not undermine the jury's understanding of the importance of focusing on the petitioner's perspective at the time of incident. Thus, the instructions did not confuse the jury as to whose perspective should be considered in evaluating whether the petitioner was entitled to the defense of self-defense to the intentional murder charges.

In reviewing both of these challenges to the jury instructions on self-defense, the Connecticut Supreme Court considered the jury charge in its entirety and in conjunction with the evidence presented at trial as is required under Supreme Court law. *See California v. Brown*, 479 U.S. 538, 541 (1987); *Cupp*, 414 U.S. at 146-47. The petitioner has identified no clearly established Supreme Court law that was misapplied or disregarded by the Connecticut Supreme Court and the Court can discern none. Thus, the petitioner has not established that the Connecticut Supreme Court's decision regarding the jury instruction on self-defense was contrary to or an

26

unreasonable application of Supreme Court law.  The petition for writ of habeas corpus is denied as to the second ground for relief.

### C.   <u>Ineffective Assistance of Trial Counsel</u>

The petitioner argues that trial counsel was ineffective in two ways: (1) he did not seek to introduce the criminal record of Anthony Young who was one of the shooting victims and (2) failed to adequately cross-examine witnesses Bailey and Vaughn.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, petitioner must demonstrate, first, that counsel's conduct "fell below an objective standard of reasonableness" established by "prevailing professional norms," and, second, that this deficient performance caused prejudice to him*. Id.* at 687-88.

To satisfy the prejudice prong of the *Strickland* test, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  *Id.* at 694.  A court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005).  To prevail, petitioner must demonstrate both deficient performance and sufficient prejudice.

*See Strickland*, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. *See id.* at 697, 700.

The court will consider the last reasoned state court decision to determine whether the decision is an unreasonable application of federal law.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Here, the court reviews the Connecticut Superior Court's decision denying the petition for writ of habeas corpus.  *See Amado v. Warden*, No. CV99428654S, 2006 WL 3491875 (Conn. Super. Ct. Nov. 15, 2006).

In reviewing the petitioner's claims of ineffective assistance of counsel, the Superior Court judge applied the standard set forth in *Strickland* to the facts of the claim.  Because the state court applied the correct legal standard, its decision is not contrary to clearly established federal law.

### 1.   Introduction of Victim's Criminal Record

The petitioner contends that his trial attorney neglected to offer information pertaining to Mr. Young's criminal record into evidence.  The petitioner argues that this information was exculpatory in nature because it would have been relevant on the issue of who was the initial aggressor at the time of shootings.  The petitioner raised this claim in his state habeas petition.

At the hearing held in the state habeas proceeding, trial counsel testified regarding his criminal trial experience.  At the time of the criminal trial, he had practiced law for seventeen years.  For five years beginning in 1976, he had served as a Connecticut public defender and had been in private practice since 1981.  He devoted close to 100 percent of his practice to  criminal defense work and had tried over 150 cases to verdict.  At least thirty of those cases involved murder or capital felony charges.  *See Amado*, 2006 WL 3491875, at *7.

With regard to petitioner's claim that he had neglected to introduce the criminal record of Anthony Young at trial, counsel testified that he had made a strategic decision to pursue a defense that Peter Hall was the initial aggressor before the shooting began. *(See* Resp't's Mem., App. FF at 18.)  The petitioner testified to that effect at trial.  Counsel related that there had been no testimony that Mr. Young was armed before the shooting began.  In view of the lack of evidence that Mr. Young was armed, it would not have been productive to pursue a defense that Young was the initial aggressor and it was likely that the judge would have excluded Young's criminal record tending to show his violent tendencies as irrelevant.  *Id.* at 18-19.  In addition, counsel stated that he did not want to introduce the criminal record of Mr. Young because he thought it might invite

the prosecutor to introduce evidence regarding the criminal records of the petitioner's acquaintances who were at the house on the day of the shootings which might have supported a conclusion that the petitioner was the aggressor.  *See id.* at 18.

The Superior Court judge found trial counsel's testimony at the habeas hearing to be extremely credible.  The judge concluded that trial counsel's decision not to offer Mr. Young's criminal record into evidence was a reasonable tactical choice.  *See Amado*, 2006 WL 3491875, at *7-8.

A defense counsel's strategic decisions will not support an ineffective assistance claim, as long as those decisions are reasonable.  *See Strickland*, 466 U.S. at 689 (petitioner "must overcome the presumptions that, under the circumstances, the challenged action might be considered sound trial strategy"); *Rompilla*, 545 U.S. at 381 (court affords "a heavy measure of deference to counsel's judgments").  The habeas judge determined that counsel had adopted a legitimate strategy to only pursue Peter Hall as the aggressor based on the testimony of the petitioner and other witnesses regarding their observations of Peter Hall with a gun.  Thus, the petitioner had not overcome the presumption that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and, under the circumstances, that conduct, "might be considered sound

trial strategy." *Strickland*, 466 U.S. at 688-89.  Accordingly, the habeas judge concluded that the petitioner had not met the deficient performance prong of the ineffective assistance of counsel standard.

The state habeas judge's factual findings and credibility determinations are "presumed to be correct," and the petitioner has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The petitioner has offered no evidence to rebut the habeas judge's credibility determinations.

This Court concludes that the habeas judge reasonably applied the *Strickland* standard in reviewing the petitioner's ineffective assistance of counsel claim to determine that trial counsel's decision to forgo the introduction of Mr. Young's criminal record as an exhibit at trial was a strategic choice that fell within the range of competent professional legal assistance.  *See Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (noting that the "wide latitude counsel must have in making tactical decisions" and affirming that "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate'") (quoting *Strickland*, 466 U.S. at 688-89).  The habeas petition is denied as to this claim of ineffective assistance of counsel.

    2.    **Cross-Examination of Key Witnesses**

The petitioner claims that his trial attorney failed to adequately cross-examine two witnesses, Joanne Bailey and Hope Vaughn.  In deciding these claims, the Superior Court judge applied the standard established in *Strickland*.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

The petitioner's contention was that if counsel had adequately cross-examined Joanne Bailey, she would have testified that he did not go to the victims' home with the intention of robbing the victims and that someone in the home had invited him inside when he arrived there.  Hope Vaughn would have testified that at the time the petitioner arrived at the house, Anthony Young invited him inside. The petitioner surmised that the testimony of Vaughn and Bailey would have bolstered his claim of self-defense because the jury would not have considered him to be a trespasser.  Furthermore, Joanne Bailey's testimony with regard to his lack of intent to rob the victims when he went to their house may have created a reasonable doubt in the minds of the jurors regarding the robbery charge underlying the felony murder counts.

"The decision 'whether to engage in cross-examination, and if so to what extent and in what manner' is generally viewed as a strategic decision left to the sound discretion of trial counsel."  *Lavayen v.*

32

*Duncan*, 311 Fed. App'x 468, 471, (2d Cir.), *cert. denied*, 558 U.S. 935 (2009) (quoting *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)). Furthermore, an attorney's decision "whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.2d 192, 201 (2d Cir. 2000).

Joanne Bailey testified at the habeas hearing, but Hope Vaughn did not testify.  Instead, counsel for the petitioner offered testimony from Hope Vaughn from another criminal matter involving the prosecution of Anthony Smalls, who had been at the house with the petitioner at the time of the shootings.  *See Amado*, 2006 WL 3491875, at *7-8.

The habeas judge reviewed trial transcripts containing the testimony of both Bailey and Vaughn on direct and cross-examination and considered Bailey's testimony at the habeas hearing and Vaughn's testimony at the trial of Smalls.  He concluded that Bailey was not a credible witness during the trial or at the habeas hearing.  In addition, given Vaughn's involvement in the heist of the narcotics from the petitioner's home which led to the shootings on October 18, 1990, the judge was skeptical that the jury in petitioner's criminal trial would have found the statements made by Vaughn during Small's criminal trial believable.  *See id.*

33

Although Bailey testified at the habeas hearing and Vaughn testified at Anthony Small's criminal trial that someone inside the victim's house had invited the petitioner to enter the house, this testimony was contrary to the testimony of the petitioner at trial. *See id.* at *7.  The petitioner never testified that anyone had invited him to enter the victim's home or that he had actually entered the victims' home prior to the shootings.  *(See* Resp't's Mem., App. EE.) In addition, any testimony that the victims had in fact invited the petitioner into their home might have undermined his claim that he was not the initial aggressor.

With regard to Bailey's testimony pertaining to the petitioner's state of mind at the time he went to the victims' home and whether he intended to rob the victims, the habeas judge found that it was unclear whether that type of testimony would have been admissible at trial. *See id.* at *7.  Furthermore, there was other significant evidence demonstrating that the petitioner had every intention of retrieving his possessions from the victims by force.  Thus, the habeas judge concluded that  counsel's decision not to elicit certain testimony from Vaughn and Bailey on cross-examination did not constitute deficient performance.  *See Amado*, 254 Conn. at 201-02, 756 A.2d at 284.  This determination was not an unreasonable application of Supreme Court law.

The habeas judge also addressed the prejudice prong of the *Strickland* standard.  The habeas judge observed that even if Bailey had testified that the petitioner had not expressed an intention to rob the victims and Bailey and Vaughn had testified that someone in the victims' home had invited the petitioner inside before the shooting began, that testimony would not have  significantly impacted the outcome of the trial, given the petitioner's trial testimony, their actual trial testimony and other witness trial testimony as well as other evidence presented during the trial.  *See Amado*, 2006 WL 3491875, at **7-9.  Thus, the habeas judge concluded that, even if trial counsel's performance was deficient, the petitioner had not demonstrated that counsel's conduct prejudiced his case.

The petitioner has presented no evidence to overcome the presumption of correctness afforded to the state court's findings. The Court concludes that the state court's determinations regarding the level of performance provided by trial counsel when cross-examining the state's witnesses and the lack of prejudice from counsel's alleged deficiencies are not an unreasonable application of the *Strickland* standard.  Thus, the petition must be denied on this claim of ineffective assistance of counsel.

## V.   **Conclusion**

The Petition for Writ of Habeas Corpus [**Doc. No. 15**] is **DENIED**. The Clerk is directed to enter judgment in favor of the respondent and close this case.

The Court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right.  Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

IT IS SO ORDERED.

/s/_____
JANET BOND ARTERTON
UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 18th day of March 2014.